UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                Case No. 07-CR-194

BRIAN L. COSHENET,

    Defendant.

**RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS INDICTMENT**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On July 24, 2007, a grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment naming Brian L. Coshenet ("Coshenet") as the defendant. The indictment charges Coshenet with making a false statement to a licensed firearms dealer in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), knowingly making a false statement or representation to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A), and possession of firearms by a prohibited person in violation of 18 U.S.C. §§ 924(a)(g) and (a)(2). On August 24, 2007, Coshenet was arraigned and entered a plea of not guilty. Trial is currently scheduled to commence before the Honorable William C. Griesbach on November 15, 2007.

In accordance with the pretrial scheduling order, on September 13, 2007, Coshenet filed a motion to dismiss the indictment together with a brief in support thereof. On September 24, 2007, the government filed its response brief. On September 28, 2007, Coshenet filed his reply brief.

Thus, the defendant's motion to dismiss is now fully briefed and is ready for resolution. For the reasons which follow, it will be recommended that the defendant's motion to dismiss be denied.

According to the government, on November 12, 2006, Coshenet attempted to purchase a long gun ( .50 caliber rifle) from Willow Bay Sporting Goods, Inc., a federal firearms licensee, in Oconto, Wisconsin. Question 11.i on the Firearm Transaction Record ATF Form 4473 prepared by Coshenet and dated November 12, 2006, asked, "Have you ever been convicted in any court of a misdemeanor crime of domestic violence?" Coshenet marked "No." A record check revealed multiple domestic violence convictions for Coshenet in the State of Wisconsin. Thus, the transaction was denied on November 14, 2006. Coshenet's answer to question 11.i is the basis for Counts One and Two of the indictment.

Subsequently, on July 17, 2007, ATF agents interviewed Coshenet. At that time Coshenet confirmed that he attempted to purchase the long gun on November 12, 2006. He admitted that he knew some of his previous convictions were domestic violence related at the time he filled out the ATF Form 4473. He also told the agents that he had the gun that he had himself tried to purchase located in a gun safe in his residence in Oconto. Coshenet said that after he was denied the opportunity to purchase the gun, he asked a friend to purchase the gun for him. Coshenet stated that he thought that he was denied during the background check due to some error, because he was not a convicted felon. Coshenet stated that he had a number of other firearms at his residence, including a 12 gauge shotgun, a .300 caliber Winchester Magnum rifle, and a couple of pistols. Coshenet agreed to surrender his guns. ATF agents agreed to take custody of the .50 caliber rifle/muzzle loader, but said that they would allow Coshenet's father to take custody of the remaining firearms.

2

ATF agents located seven (7) firearms in a gun safe in Coshenet's residence, one of which was the firearm he attempted to purchase on November 12, 2006. The possession of these firearms, predicated on Coshenet's misdemeanor convictions for crimes of domestic violence, is the basis for Count Three of the indictment.

## II. DISCUSSION

Question 11.i on the Firearm Transaction Record ATF Form 4473 asks "Have you ever been convicted in any court of a misdemeanor crime of domestic violence?" Coshenet does not dispute that he has indeed been convicted of misdemeanor crimes of domestic violence in violation of the laws of the State of Wisconsin. However, Exception 1 on the Form 4473 states, in pertinent part, as follows:

> A person . . . who has been convicted of a misdemeanor crime of domestic violence is not prohibited from purchasing, receiving, or possession of a firearm if: (1) under the law of the jurisdiction where the conviction occurred, the person has been pardoned, the conviction has been expunged or set aside, or the person has had civil rights (*the right to vote, sit on a jury, and hold public office*) restored AND (2) the person is not prohibited by the law of the jurisdiction where the conviction occurred from receiving or possessing firearms. Persons subject to this exception should answer "no" to 11.c or 11.i as applicable. (Emphasis in original)

Coshenet argues that Exception 1 on ATF Form 4473 applies to him. Thus, he claims that he correctly answered Question 11.i when he marked "No."

In Wisconsin, persons convicted of felony offenses are stripped of their right to vote unless their right to vote has been restored, pursuant to Wis. Stats. § 6.03. This does not apply to misdemeanants. Persons convicted of felony offenses are also stripped of their right to sit on a jury, unless their civil rights have been restored, pursuant to Wis. Stats. § 756.02. This also does not apply to misdemeanants. Finally, Article 13, Section 3 of the Wisconsin Constitution prohibits persons

3

convicted of felony offenses from holding any public office, unless pardoned of the conviction. The same prohibition from holding public office applies to those convicted of federal or state misdemenors involving a violation of public trust. However, other misdemeanor violations do not trigger the loss of the right to hold public office under the Wisconsin Constitution.

Coshenet argues that he is entitled to invoke the protection of Exception 1 because he never lost his civil rights as a result of his misdemeanor convictions. Moreover, Coshenet argues that Wis. Stats. § 304.078 provides that, upon the completion of a sentence, a convicted person's civil rights are restored, including the right to vote and sit on a jury. Thus, because he had completed his sentences, including extended supervision, at the time he completed ATF Form 4473 on November 12, 2006, his civil rights had been restored. Thus, Coshenet claims that he met the first prong of Exception 1 of ATF Form 4473.

Coshenet also argues that he met the second prong of Exception 1 because he was not otherwise prohibited under Wisconsin law (more precisely Wis. Stat. § 941.29(1)) from possessing a firearm.

The parties agree that Coshenet was not a convicted felon at the time he completed the ATF Form 4473. The parties also agree that Coshenet did not lose his right to vote, his right to sit on a jury or his right to hold public office as a result of his convictions of misdemeanor crimes of domestic violence. Where they part ways is on the issue of whether the term "restored" as utilized in Exception 1 can be said to apply when a defendant never loses his civil rights upon conviction under the applicable state law. Stated another way, in those circumstances where civil rights are never taken away, can they ever be treated as "restored" under Exception 1?

4

The parties each cite cases that seem to support their respective positions on the question. Coshenet relies principally on *United States v. Indelicato*, 97 F.3d 627 (1st Cir. 1996). The government relies on *United States v. Logan*, 453 F.3d 804 (7th Cir. 2006), *McGrath v. United States*, 60 F.3d 1005 (2d Cir. 1995), and *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999). For our purposes, we need not look any further than the Seventh Circuit's decision in *Logan* for guidance on how Coshenet's motion to dismiss should be decided.

To be sure, *Logan* did not involve Exception 1 to the ATF Form 4473. Rather, it involved the question of whether a state conviction that did not result in a deprivation of civil rights can be a predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). However, in assessing whether such a conviction could be a predicate offense, the *Logan* court was required to construe statutory language that is virtually identical to the language found in Exception 1.

In *Logan*, the defendant claimed that three battery convictions could not be used as predicate offenses for application of the Armed Career Criminal Act. This was so, according to Logan, because § 921(a)(20) excludes from the definition of "conviction" an offense that "has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." By virtue of such battery convictions Logan did not lose the right to vote, the right to hold public office or the right to serve on juries. Thus, Logan argued that such convictions should be treated as if they were convictions following which those rights were terminated but later restored.

The district court rejected Logan's argument, holding that an offender whose civil rights have been neither diminished nor returned is not a person who "has had civil rights restored." The Seventh

5

Circuit affirmed. In doing so, the court acknowledged the First Circuit's decision in *Indelicato*, but elected not to follow such decision, electing instead to follow the Second Circuit's decision in *McGrath*. Specifically, the court in *Logan* held that because Logan had never (at least as a result of the battery convictions) had his civil rights taken away, he could not have them "restored." Thus, his battery convictions could be used as predicate offenses for purposes of the Armed Career Criminal Act. In the words of the Seventh Circuit, "The word 'restore' means to give back something that had been taken away. As *McGrath* remarked, 'the "restoration" of a thing never lost or diminished is a definitional impossibility.'"

Even more to the point, however, during the course of its analysis in *Logan* the Seventh Circuit had occasion to discuss the very statutory provision upon which Exception 1 is based, i.e., 18 U.S.C. § 921(a)(33)(B)(ii). The court stated as follows:

> Section 922(g)(9) of the criminal code makes it unlawful for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm that is connected with interstate commerce. This section has a definitional provision corresponding to § 921(a)(20). That provision, 18 U.S.C. § 921(a)(33)(B)(ii), reads: "A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *This tracks § 921(a)(20) in treating expungement, pardon, or restoration of civil rights as canceling all effect of the conviction - but it shows that the "restoration of civil rights" clause is inapplicable to one whose civil rights were never taken away. For such persons, expungement and pardon are the only ways to regain the right to possess firearms.* In other words, when Congress addressed this subject directly, it supported the second circuit's conclusion in *McGrath*, not the first circuit's prediction in *Indelicato*.

*Logan*, 453 F.3d at 808 (emphasis added).

6

In light of the Seventh Circuit's decision in *Logan*, Coshenet's argument must be rejected. Simply stated, because Coshenet never had his civil rights taken away, he has not (and could not have) had them "restored" within the meaning of that term in § 921(a)(33)(B)(ii). Such being the case, Exception 1 of ATF Form 4473 was not applicable to him on November 12, 2006 when he filled out the Form 4473 and he therefore cannot seek its protection. Likewise, the provisions of 18 U.S.C. § 921(a)(33)(B)(ii) do not shield him from the criminal charge set forth in Count Three of the indictment.

**NOW THEREFORE IT IS RECOMMENDED** that Coshenet's motion to dismiss the indictment be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) - (C), Federal Rule of Criminal Procedure 59(b)(2), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 3rd day of October 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge